IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00351-WYD-MEH

DONNELL E. MONROE,

    Plaintiff,

vs.

ADAM M. MYERS, JR., M.D.,

    Defendant.

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
FOR DISMISSAL OF ACTION

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

    This matter is before the Court on the Defendant's Motion for Summary Judgment. This case has been referred under the Order of Reference to Magistrate Judge, filed on June 6, 2005, pursuant to 28 U.S.C. § 636(b)(1)(A)&(B) and Fed.R.Civ.P. 72(a) and (b), for recommendation on this motion. The matter is fully briefed, and oral argument would not materially assist the Court in adjudicating the motion. For the reasons stated below, it is **recommended** that the Motion for Summary Judgment be **granted**, resulting in the case being dismissed in its entirety.

    All parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider

frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a <u>de</u> <u>novo</u> determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

In his Complaint, filed on February 25, 2005, Plaintiff alleges a violation of his constitutional rights established by 42 U.S.C. § 1983. Specifically, the Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs while he was incarcerated, causing him to suffer both physically and mentally. Plaintiff alleges that Defendant removed him from Coumadin, a blood thinning medication, and, as a result and over a period of time, he developed blood clots, incurred chest pains and shortness of breath, developed varicose veins in his legs, suffered an atrial flutter, and experienced pain in his left arm. Plaintiff asserts that he lived in constant fear of a heart attack or a stroke. Based on these allegations, the Plaintiff contends that his Eighth Amendment right to adequate medical care and recovery was violated.

The Defendant has challenged the Plaintiff's claim under a Motion for Summary Judgment, arguing that his only involvement with the Plaintiff was in a response to a request for consultation, and that he did not order the discontinuation of Coumadin as the Plaintiff alleges. The Defendant

contends that there is no genuine issue of material fact that his consultation in this regard did not constitute deliberate indifference in violation of 42 U.S.C. § 1983. Plaintiff counters the motion by continuing to argue that the Defendant had something to do with the discontinuation of Plaintiff's Coumadin, if not directly then as the Chief of the Hematology and Oncology Division at Denver Health Medical Center. Plaintiff contends that issues exist within the case which would preclude the entry of judgment against him.

## DISCUSSION

**I.   Defendants' Motion for Summary Judgment.**

   **A.   Standard of Review.**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). If the movant properly supports a motion for

summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Finally, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

Because the Plaintiff is proceeding without counsel, the Court must construe his pleadings and other filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

### B. Merits of Plaintiff's Claim.

A prisoner's Eighth Amendment rights are violated when government officials show deliberate indifference to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment applies to state officials through the Fourteenth Amendment. *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)). The deliberate indifference standard requires a showing of more than mere negligence, or even gross negligence.

*Estelle*, 429 U.S. at 105-06. It involves a two-part test. First, the prisoner must show that objectively, the medical need is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). The Defendant disputes that Plaintiff's medical needs were sufficiently serious to warrant consideration under the Eighth Amendment.

A plaintiff may satisfy the second part of the test by showing that, subjectively, the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. It is not enough to establish that the official should have known of the risk. *Id*. A difference of opinion between the inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation, but may provide the basis for a negligence claim. *See Estelle*, 429 U.S. at 106-07. Defendants contend that Plaintiff's claim essentially demonstrates a difference of opinion with regard to the course of treatment chosen for Plaintiff's medical condition.

Deliberate indifference requires more than negligence, but less than conduct that is undertaken "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. More specifically, deliberate indifference requires that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn and he must also draw the inference." *Id*. at 837. Whether a prison official had the requisite knowledge of a substantial risk can be inferred from circumstantial evidence. *Id*. at 842.

### 1.   **Objective Component.**

In order to meet the objective component of a deliberate indifference claim, a prisoner must first produce objective evidence that the deprivation at issue was, in fact, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citations omitted).  The Court of Appeals for the Tenth Circuit has indicated:

> [T]hat a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." . . . Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. . . .

*Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

The harm alleged by the Plaintiff in this case is the decision to remove him from the medication Coumadin.  *See* COMPLAINT, Docket #3, pp. 4-5; PLAINTIFF'S RESPONSE FOR MOTION OF SUMMARY JUDGMENT, Docket #50.  "Once the prisoner selects the harm, . . . , the focus of the objective prong should be solely on whether that harm is sufficiently serious."  *Mata*, 427 F.3d at 753.  In this case, the record shows that on November 14, 2001, prior to incarceration, the Plaintiff was admitted to University Hospital in Denver.  *See* COMPLAINT, Docket #3, Exhibit #1.  Upon discharge on November 20, 2001, the noted diagnosis was "1.  Pulmonary embolism with pulmonary infarct. 2. Cocaine abuse."  *Id*.  The treatment plan noted by Edward D. Chan, MD, on December 17, 2001, was "to anticoagulate the patient for six months only with warfarin."  *Id*. at p. 3.  Warfarin is an anticoagulant drug, which is marketed as Coumadin.  *See* Encyclopedia Britannica Online, available at www.britannica.com.

Thereafter, on March 29, 2002, a Colorado Department of Corrections ("CDOC") physician,

Dr. John Bloor, wrote a consult to the Pulmonary Clinic at Denver Health concerning the Plaintiff and seeking information as to what the duration of Coumadin with regard to him should be, together with whether or not a follow-up CAT scan should be ordered. *See* DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF SUMMARY JUDGMENT, Docket #49, Exh. C-2. Plaintiff was then evaluated by Dr. Michael Hanley, a pulmonary staff physician at Denver Health, on June 3, 2002. *Id.* At Exh. C-3. Dr. Hanley's "Assessment/Plan," indicates that he found Plaintiff to be without risk factors for pulmonary embolism, and under the section designated as "Recommendations," the Doctor noted that the Plaintiff's Coumadin should be discontinued. *Id*. Other recommendations of Dr. Hanley included a hypercoagulable work-up and a cardiology appointment for atypical chest pain. *Id.*

The Defendant did not become involved in this situation until August 2002, when a consult regarding the Plaintiff was sent to him from Dr. Creany of the CDOC. *See* DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF SUMMARY JUDGMENT, Docket #49, Exh. B & C-4. The only evidence in the record of this case demonstrates that Defendant had no more involvement in the Plaintiff's medical care than his response to Dr. Creany's request for a consultation. *Id*. at Exh. B. The record establishes that, prior to the Defendant ever entering the picture, at least two doctors, Dr. Chan and Dr. Hanley, had considered the matter and were of the opinion that only a limited period of anticoagulate therapy was appropriate with regard to the Plaintiff's medical care. Plaintiff indicates that in approximately February 2004, he was placed back on Coumadin by Dr. Adam Myers. *See* COMPLAINT, Docket #3, p. 4. However, this course of treatment was prescribed significantly after Defendant's involvement in the matter. Therefore, with regard to the period relevant to the claim against the Defendant, the Plaintiff has not established that a medical need diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

7

would easily recognize the necessity for a doctor's attention existed, in order to satisfy the objective component of his deliberate indifference claim. The various medical articles and other information the Plaintiff has filed with the Court with regard to anticoagulate therapy are interesting and provide background, but do not constitute a diagnosis by a physician mandating such treatment at the time the Defendant was consulted. Additionally, these materials clearly demonstrate that this very issue is one that falls within the medical judgment of a physician which is not subject to second-guessing based upon a constitutional claim. *See*, *e.g.*, *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997).

In his Complaint, and his response to the summary judgment motion under consideration, Plaintiff alleges that following the episode for which he was hospitalized in November 2001, he was to be on Coumadin for life. However, he has failed to provide any evidence, other than his own statements, to substantiate who, if anyone, prescribed this regimen. While the statements he has made in his Complaint may be treated as an affidavit in support of his allegations, *see Green*, 108 F.3d at 1301 n.1, the undisputed evidence from his medical records demonstrates the contrary. As the nonmoving party responding to a summary judgment motion, the Plaintiff is required to identify specific facts, through affidavits, depositions, or exhibits, from which a rational trier of fact could find in his favor. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Although the Court must "view the evidence and draw all inferences in the light most favorable to the party opposing summary judgment, that party 'must identify sufficient evidence which would require submission of the case to a jury.'" *Langley v. Adams County*, 987 F.2d 1473, 1476 (10th Cir. 1993) (quoting *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992)). Merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990).

8

Significantly, the Court is not required to credit medical opinions from the Plaintiff, who is a layperson with no apparent medical training.

For example, in *Hayes v. Smith*, ___ F. Supp.2d ___, 2006 WL 1663587 (D. Idaho June 6, 2006), a prisoner alleged that he should be continued on the narcotic prescription pain medication Neurontin, while the prison's doctor recommended that plaintiff be weaned from Neurontin and moved to a prescription non-narcotic pain medication. The court stated that the plaintiff's complaints amounted to a disagreement with a medical professional as to what the proper course of treatment should be, and the plaintiff offered no medical opinion showing that the doctor's plan amounted to deliberate indifference. *Id.* at *5. The plaintiff had offered an affidavit arguing that he should have been prescribed the narcotic medication. The court stated that it would consider those parts of the plaintiff's affidavit that contained information within the plaintiff's personal knowledge, but that other statements expressed by the plaintiff were not admissible without a supporting medical opinion, which the plaintiff did not have. *Id.* at *6. The same is true here. *See also Young v. Danielson*, __ F. Supp.2d __, 2005 WL 3283712 at *7 (E.D. Cal. Nov. 28, 2005) ("Declarations must be based on personal knowledge . . . . Plaintiff makes conclusory statements on issues concerning his condition, diagnosis, prognosis, treatment . . ., all matters on which Plaintiff, who is not a medical expert, is not qualified to testify."); *id.* at *13 ("Plaintiff is not a medical doctor and is not qualified to testify as to the diagnosis or what treatment was necessary.") (recommending judgment as a matter of law on deliberate indifference claim).

Accordingly, the Plaintiff's claim fails because he has not produced objective evidence that the deprivation at issue was, in fact, sufficiently serious under the standards of an Eighth Amendment medical indifference claim.

### 2. Subjective Component.

Even if the Plaintiff would have met his burden with regard to establishing a genuine issue of material fact concerning the objective component of his claim, his claim would still warrant dismissal. The record demonstrates that in response to Dr. Creany's request for consultation in August, 2002, the Defendant recommended that Plaintiff's ATIII test be repeated, and if still found to be abnormally low, then Plaintiff should be referred to the Hemotology clinic for an appointment. DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF SUMMARY JUDGMENT, Docket #49, Exh. C-4. The Plaintiff's ATIII test results for October, 2002, and January, 2003, were both normal. *Id*. at Exh. C-6.

As the Court of Appeals for the Tenth Circuit has recently opined:

> So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met. Indeed, our subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not the ultimate treatment necessary . . . .

*Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

The Plaintiff has provided no medical evidence specific to him which demonstrates that the Defendant was aware of an excessive risk to Plaintiff's health at the time relevant to the claim he has made against the Defendant. As discussed in the preceding section, two doctors had found that only a limited period of anticoagulate therapy was appropriate with regard to the Plaintiff's medical care at the time of Defendant's consultation. Additionally, even if the Defendant had known of a risk of harm to the Plaintiff, but responded reasonably to the known risk, "he will not be held liable even if the harm ultimately is not prevented." *Barney v. Pulsipher*, 143 F.3d 1299, 1311, n.12 (10th Cir. 1998); *Farmer*, 511 U.S. at 844-45. As noted in the preceding section, Plaintiff has presented medical articles and other information with regard to anticoagulate therapy, but no properly presented

evidence of diagnosis by a physician mandating such treatment at the time the Defendant was consulted. The record in this regard fails to demonstrate a sufficient disagreement regarding the reasonableness of the measures taken by the Defendant to require submission of the issue to a fact finder for resolution.

Plaintiff argues that because of his position as Chief of Hematology and Oncology at Denver Health, the Defendant should have known of the risks involved in this matter. However, it is not enough to establish that the official should have known of the risk. *Farmer*, 511 U.S. at 837. The Plaintiff must demonstrate that there was actual knowledge of the risk to the Plaintiff. "Deliberate indifference" is a very stringent standard of fault that permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversights." *Board of Cty. Comm'rs of Bryan Cty., OK v. Brown*, 520 U.S. 397 (1997). Further, the Plaintiff argues that even if blame for the matter is to be laid upon other medical personnel, that it would be Defendant's responsibility as the Chief of the Hematology Department to make sure the staff makes the right decisions. "Personal participation is an essential allegation in a § 1983 action." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Massey v. Wilson*, 484 F. Supp. 1332 (D. Colo. 1980). A supervisor may not be held liable in a civil rights action merely because of his or her supervisory position. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Mckee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Conclusory allegations of personal participation are insufficient to warrant liability. *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989); *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986); *Wise v. Bravo*, 666 F.2d 1328, 1332-23 (10th Cir. 1981).

A supervisor may be subject to liability under § 1983 if the plaintiff alleges and proves that there is an "affirmative link" between the supervisor's action or failure to act and the alleged

constitutional violation. *McClelland v Facteau*, 610 F.2d 693, 696 (10th Cir. 1979). Such an affirmative link can be established by showing that the supervisory authority had some policy or custom which caused the alleged violation, or that the supervisor's failure to establish procedures or to train and supervise personnel led to the violation. *Id*. When a supervisor has notice of misconduct, and fails to take action to correct the misconduct, the supervisor may be liable for civil rights violations which result. *Id*. at 697-98.

Here, Plaintiff alleges no facts to demonstrate a connection between the Defendant and the alleged constitutional violation he claims. In essence, Plaintiff seems to claim that if the violations occurred, it has to be attributable to the Defendant because he was "in charge." Plaintiff does not point to any particular policy or training practice, or lack thereof, which he claims led to the alleged wrong. Plaintiff appears to argue that this Defendants knew or should have known of the violation of his rights, based on his administrative position, but fails to demonstrate how or why. While the Defendant may have had access to information in this regard, based upon the position in which he is employed, this fact alone cannot establish personal participation, control or direction, or a failure to supervise in the events which form the basis of Plaintiff's claim. Defendant contends there is no documentary evidence to support a finding that he recommended discontinuation of Plaintiff's Coumadin. *See* DEFENDANT'S MEMORANDUM BRIEF IN SUPPORT OF SUMMARY JUDGMENT, Docket #49, Exh. B. The record indicates a notation on an authorization form indicating "per Dr. Myers 8/21/02 no need for treatment or f/u hematology." *See* COMPLAINT, Docket #3, Exh. #3. However, there is no evidence that note is from the Defendant, and the record would demonstrate that it simply reflects that the follow up ATIII results that the Defendant had recommended turned out to be "within normal limits" and so no follow-up treatment was necessary. *See* DEFENDANT'S

MEMORANDUM BRIEF IN SUPPORT OF SUMMARY JUDGMENT, Docket #49, Exh. B & C-5.

Plaintiff's allegations are wholly conclusory. The Plaintiff has failed to provide evidence or allege well-pled facts or facts from which it can be inferred concerning the personal participation of the Defendant sufficient to demonstrate personal participation or to attach supervisory liability. Merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment. *See Lujan*, 497 U.S. at 884. Without an affirmative link to tie the Defendant to the violation alleged by the Plaintiff, the Plaintiff cannot establish that the Defendant caused a deprivation of a federal right or that this Defendant can be held liable for the actions of others.

In his claim, the Plaintiff contends that the removal of Coumadin from his treatment has caused him to develop various health conditions, together with pain and suffering. In attempting to establish an issue for trial, Plaintiff appears to argue that because he was taken off of the medication for a period of time, and the conditions he complains of have developed some where along the way, the jury can infer deliberate indifference by the Defendant. However, the causal connection between the removal of the Coumadin and the health conditions alleged by the Plaintiff is not so obvious that a lay person would be able, without verifying medical evidence or expert opinion, to draw the conclusion the Plaintiff indicates.

To meet medical indifference evidentiary standards clearly requires Plaintiff to present testimony from a medical professional whereby the professional states his or her opinion that the removal of Coumadin treatment from a patient such as the Plaintiff for the period of time that the medication was stopped would result in the development of the conditions described by the Plaintiff and would be so obvious that any person who is licensed as a medical professional must be deemed

to know that the removal of this medication is substantially likely to lead to such conditions. As a layperson, untrained in medicine, the Plaintiff is not competent to proclaim the appropriate treatment in this regard or to contradict the medical evidence in the record. Finally, in addition to demonstrating that Defendant knew that his actions were substantially likely to cause Plaintiff's problems, Plaintiff must present evidence that tends to show that Defendant deprived him of the Coumadin not for any medical reason, but because he simply did not care that Plaintiff was substantially likely to suffer harm as a result of the failure to provide the medication.

In Colorado, a party who brings a claim of negligence against a medical professional who is subject to licensing requirements in this state is required to provide a "certificate of review" from an expert or similarly-licensed professional which demonstrates that (1) the complainant has consulted a person who has expertise in the area of the alleged conduct; and (2) that the person who was consulted has reviewed all material relevant to the alleged conduct and concluded that the claim does not lack substantial justification. *See* Colo. Rev. Stat. § 13-20-602(3)(a). The medical professionals who oversee the care of inmates who are in the custody of the CDOC are subject to a much higher standard than mere negligence in a medical indifference case, and Plaintiff is required to demonstrate that the conduct of the Defendant fell below that higher standard. Accordingly, at a minimum, Plaintiff should be required to obtain and submit the opinion of an expert that would establish a lack of compliance by the Defendant with the constitutional standard of care, and failure to submit such an opinion should be fatal to a plaintiff's case. *See Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1990). The Plaintiff has not done so.

Only by presenting such testimony through a medical expert can Plaintiff meet the test that is required to demonstrate the existence of deliberate indifference on the part of Defendant. Only a

medical expert can offer opinions on matters of medical causation, including such issues as whether the removal of Coumadin from Plaintiff's medical treatment *caused* the Plaintiff's conditions. Plaintiff himself lacks the medical knowledge and expertise to offer any opinions on the issues of causation that underlie his claim against Defendant. Thus, without the testimony and opinions of an expert to meet the above tests and standards, Plaintiff cannot state a prima facie case. If he cannot present evidence that would constitute a prima facie case, Plaintiff's case should be dismissed.

The articles and information submitted by the Plaintiff clearly evidence that anticoagulate therapy "is a classic example of a matter of medical judgment," which is insufficient to sustain a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation). Without any evidence specific to the Plaintiff that the removal of Coumadin is a contributing factor or the cause of an increase in Plaintiff's condition or of any substantial harm sustained by the Plaintiff, the Plaintiff's allegations are conclusory statements and fail to establish a genuine issue of material fact to survive summary judgment.

Survival of this claim under the Defendant's summary judgment motion turns on the distinction between "deliberate indifference" and ordinary "negligence." While the Plaintiff's allegations parrot the "deliberate indifference" terminology of *Estelle* and its progeny, he fails to demonstrate any facts or evidence in support of the contention. In this case, even when viewing the record in a light most favorable to the Plaintiff, it simply does not support the Plaintiff's position.

The Defendant contends in his summary judgment motion that a factor to be considered is that he did not have a physician-patient relationship with the Plaintiff, which is an issue central to a claim of negligence, and the informational materials supplied by the Plaintiff, of course, may be helpful in

15

demonstrating a duty or standard of care, which is also an issue which would be central to a claim of negligence. However, the focus in a medical indifference claim is on the knowledge of an excessive risk to an inmate's health <u>and</u> disregard of that knowledge. From the record, it is apparent that there may be other methods of medical treatment and care available in a situation such as the Plaintiff's, but the record does not demonstrate that offering a consultation which did not immediately direct the implementation of Coumadin therapy constitutes deliberate indifference. The record demonstrates that the Defendant offered a consultation, which others in the medical community may have disagreed with, but did not deliberately disregard Plaintiff's medical needs. Plaintiff's claim in this regard boils down to a disagreement with the treatment and care that was administered.

While it is clear that the Plaintiff does not agree with nor is he satisfied with the medical attention he received, the fact remains that his difference of opinion concerning the attention he received will not support a claim of deliberate indifference against this Defendant. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Construing the record in a light most favorable to the Plaintiff, his allegations struggle to rise even to the level of negligence.

The record demonstrates that a reasonable fact finder could not conclude that the actions by Defendant constituted a valid Eighth Amendment deliberate indifference claim. Therefore, summary judgment is appropriate against the Plaintiff on his claim against this Defendant.

## CONCLUSION

Based upon the foregoing, and the entire record herein, it is hereby **recommended** that Defendant's Motion for Summary Judgment [Filed February 15, 2006; Docket #48] be **granted** and this action be dismissed, with prejudice, in its entirety.

Dated at Denver, Colorado, this 17th day of July, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge